446 So.2d 795 (1984)
STATE of Louisiana, Appellee,
v.
L.J. WILLIS, Appellant.
No. 15620-KA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
*796 Weinstein & Hiller by Lewis Weinstein, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., R. Lee Irvin and Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before HALL, JASPER E. JONES and SEXTON, JJ.
JASPER E. JONES, Judge.
The defendant, L.J. Willis, was charged with negligently killing Qumi Willis, in violation of La.R.S. 14:32.[1] He was convicted in a bench trial. He appeals his conviction and sentence, contending there was insufficient evidence to support his conviction.
At about 1:00 a.m. on May 15, 1982, Qumi Willis, the wife of the defendant, was killed by a shot from a .410 gauge shotgun in the kitchen of her home in Shreveport. At the time of the shooting there was no one in the kitchen except the decedent and the defendant and they were involved in an argument and struggle for control of the gun at the time of the shooting.
When the shooting occurred Melvina Smith and Peggy Houston were in the living room of the Willis home which was separated from the kitchen by a bedroom. Smith and Houston heard the shot. Houston went into the kitchen and found the decedent lying fatally wounded near the refrigerator which was located in the northeast corner of the kitchen and the shotgun lying on the floor and the defendant standing nearby.
The trial judge found there were no witnesses to the shooting other than the defendant. The evidence fully supports this finding even though Melvina Smith testified from her death bed in a hospital in Monroe that she had seen the shooting through the doorways located between the living room and bedroom and between the bedroom and the kitchen. The substance of Smith's testimony was that she saw the defendant point the gun and fire the shot that killed Qumi. Smith was very ill at the time she testified and didn't respond to many of the questions which were propounded on direct and cross examination. Her testimony was confusing, unclear, and contrary to much of her earlier testimony in a deposition taken to perpetuate her testimony. Peggy Houston testified that at the time of the shooting Smith was standing with her back to the living room/bedroom wall facing away from the kitchen. Houston testified that Smith could not possibly have seen into the kitchen from her location. Houston testified that she was facing Smith talking to her at the time the shooting occurred and did not see what occurred in the kitchen. The trial judge's rejection of Smith's testimony was correct and he correctly concluded there were no eye witnesses to the shooting.
On the night of and prior to the shooting the victim, the defendant, Houston and perhaps Smith were drinking Scotch. The defendant and the victim had been engaged in at least one argument and physical confrontation in the bedroom prior to the fatal *797 altercation that occurred in the kitchen. During the earlier confrontation the victim, who was apparently larger and stronger than the defendant, succeeded in getting on top of the defendant on the floor and holding each of his arms stretched out to his side.
Shreveport police officer McCauley testified that upon his arrival at the Willis home that the defendant, following a Miranda warning, gave a voluntary oral statement to him and a fellow officer.
The officers testified that the defendant told them that he had been earlier threatened by the victim and for this reason feared the defendant might get the shotgun and harm him with it. The defendant stated that in an effort to prevent this from happening he moved the gun from the northwest corner of the bedroom adjoining the kitchen to a point in the bedroom near the doorway to the kitchen. The defendant told the officers that he did not know whether he or the victim initially picked the gun up from its location in the bedroom near the kitchen door and included the gun as a part of the confrontation that occurred in the kitchen. The defendant stated that just before the shooting that he and the victim were each attempting to control the gun. He stated that he had his hand on the stock and the victim had her hands on the barrel. He stated that he did not have his hands on the trigger. During the contest for the possession of the gun it went off and Qumi Willis was fatally injured. The officer could not remember if the defendant had told him in this oral statement that the defendant was unaware the gun was loaded when he moved it from the corner of the bedroom to the point near the door into the kitchen, but we note that in the state's response to defendant's discovery motion the state's disclosure of the oral statement contained the following statement: "He said neither of them were aware the gun was loaded."
The defendant did not testify at trial and there was no direct evidence as to the circumstances immediately before and at the time of the shooting except the defendant's oral statement to the investigating police officers.
At the conclusion of the trial the trial judge reviewed the definition of criminal negligence contained in La.R.S. 14:12[2] and he reviewed 14:32 which defines the crime of negligent homicide. He observed that there were no eyewitnesses to the shooting, that the victim had been shot at close range because of powder burns around the wound, that the victim and defendant had been drinking and had earlier been involved in an altercation and then concluded: "The court finds that the District Attorney has sufficient evidence of criminal negligence by the fact the defendant brought a dangerous weapon, a loaded .410 shotgun, into the fracas, which was already highly charged emotionally, between himself and now deceased wife.
The Court finds that there is such a disregard of the interests of others by this act that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonable, careful man under like circumstances and, therefore, finds the defendant guilty of negligent homicide." (emphasis added)
The appellate standard of review of the sufficiency of evidence requires that when the evidence is viewed in the light most favorable to the prosecution it must be sufficient for a rational juror to conclude that the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The Jackson v. Virginia test is applicable to cases wherein the conviction is based upon direct and circumstantial evidence. This standard of review is applicable to the provisions *798 of 15:438[3] which requires the circumstantial evidence to exclude every reasonable hypothesis of innocence to support a conviction. State v. Chism, 436 So.2d 464 (La.1983); State v. Sutton, 436 So.2d 471 (La.1983); State v. Smith, 441 So.2d 739 (La.1983). The Chism, Sutton, and Smith cases require affirmation of a conviction based upon circumstantial evidence if there is sufficient evidence for a rational factfinder to conclude beyond a reasonable doubt that the evidence excludes every reasonable hypothesis of innocence.
The only direct evidence of the defendant's exercise of control of the gun prior to the fatal altercation was his statement to the officers that he moved the gun from the northwest corner of the bedroom to a point on the west wall of the bedroom close to the kitchen door in order that he could maintain control over the gun. He stated that he was unaware the gun was loaded. He stated that he desired to maintain control over the gun because of prior threats made to him by his wife which were apparently related to the gun. This established act of moving the gun a few feet down the west bedroom wall some unknown time before the occurrence of the fatal altercation does not constitute direct evidence that the defendant brought the gun "into the fracas." There is no direct evidence as to who picked the gun up from its resting place in the bedroom near the kitchen door and sought to use it in some manner in connection with the altercation that was in progress between the victim and the defendant in the kitchen. The oral statement given by the defendant to the officer on the front porch of the Willis home shortly after the shooting contained a statement by the defendant that he didn't know who first obtained possession of the gun.
We agree with the trial judge that introduction of the gun into the fracas would constitute criminal negligence. See State v. Brown, 339 So.2d 6 (La.1976). The issue is whether there was sufficient evidence to support the finding by the trier of fact that the defendant was the combatant who initially placed the gun into the fight. Because there is no direct evidence of this fact the trial judge could have made this determination only by relying upon circumstantial evidence.
Circumstantial evidence is evidence which, if believed, proves a fact from which the fact finder may logically and reasonably conclude another fact exists. State v. Sutton, supra.
The factfinder here could have rationally concluded from the established fact that the defendant placed the gun near the kitchen door (and therefore knew that it was there) and the established fact that he thereafter had his hand on the stock portion of the gun (which is the operational end of the weapon) during the struggle for the control of the gun, that he was in fact the one of the two fighting spouses who initially seized and placed the gun into the fight. However, this determination by the rational factfinder does not end the inquiry because in order for circumstantial evidence to support a conviction the rational factfinder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence.
We conclude after viewing all the evidence in the light most favorable to the prosecution, that no rational factfinder could find that there is no reasonable hypothesis that the defendant is innocent of the crime of negligent homicide.
The defendant had been subdued on the bedroom floor by the victim a short time before the final altercation took place. This proven fact establishes that the victim was a strong and aggressive fighter. The victim knew the gun was in the bedroom. She had threatened to use it on the defendant. The defendant feared she would use it to harm him. She may have seen it in its position by the kitchen door. She could have been the first to seize the gun. The *799 defendant could have only became involved in the struggle for possession of the gun after the victim brought it into the fracas. The defendant, under these circumstances, would have been justified in struggling for the possession of the gun to prevent the victim from possibly using it upon him. The defendant's conduct under these facts, which are based upon a reasonable inference from facts established by direct evidence, would not have been criminal negligence as defined by 14:12 and which is an essential element of the crime of negligent homicide. The defendant's action would have been acceptable conduct of a reasonable man attempting to protect himself from harm.
We REVERSE the conviction and sentence and order the defendant discharged.
NOTES
[1] R.S. 14:32Negligent homicide

Negligent homicide is the killing of a human being by criminal negligence.
The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
Whoever commits the crime of negligent homicide shall be imprisoned with or without hard labor for not more than five years, fined not more than five thousand dollars, or both.
[2] R.S. 14:12Criminal negligence

Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of other that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
[3] R.S. 15:438Circumstantial evidence

The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.