515 So.2d 521 (1987)
STATE of Louisiana,
v.
Helen KENNINGTON.
No. KA 87 0251.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
William R. Campbell, Atty. for State, New Orleans, for appellee.
Ellen M. Evans, Office of Indigent Defender, Covington, for appellant.
Before COVINGTON, SAVOIE and LeBLANC, JJ.
LeBLANC, Judge.
Defendant, Helen Kennington, was charged by grand jury indictment with second degree murder, in violation of La.R.S. 14:30.1. After pleading not guilty, she was tried by jury, and found guilty as charged. The trial court sentenced her to life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence.
Defendant has now appealed her conviction and sentence, designating two assignments of error. Assignment of error number one, however, was not briefed on appeal and, therefore, is considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

*522 FACTS
In the early morning hours of February 28, 1981, Helen Kennington shot and fatally wounded Mike Trimmer using a .22 caliber revolver. The incident took place outside of the L'Amica Chateau Lounge in Slidell, Louisiana.
David Robinson was an eyewitness to the shooting and testified as follows concerning what occurred that fateful morning. He arrived at the bar at 12:30 a.m. and had been there for about two hours when he went outside for some air. A fist fight had broken out in the parking lot between defendant's companion, Wally Holley, and another man. A crowd of seven to ten people stood around watching the fight. It ended when defendant yelled for them to stop, pulled out a gun and fired three to four warning shots. At that point, the young lady Mr. Robinson was with wanted to go back inside, so he escorted her and then returned outside in a few minutes. The next thing he saw was a car driving to the end of the parking lot and stopping. Defendant then got out of the car, pointed the gun back at the crowd still standing in the parking lot, and fired two shots. After the shots were fired, Mr. Robinson observed a man in the crowd collapse. No one paid any attention to the man until someone finally rolled him over and observed a bullet wound in his abdomen. The injured man was not the person involved in the earlier fight with Mr. Holley.
At approximately 2:24 a.m., Detective Mike Moore of the St. Tammany Parish Sheriff's office received a report regarding the shooting. Detective David Bulloch met him at the scene, after which they went to the hospital with the victim, who died during surgery. The detectives then went to Pitt Grill, where the suspect vehicle had been sighted. Several other deputies were already present, and defendant and Mr. Holley had been placed under arrest. A .22 caliber revolver was visible on the front seat of the suspects' car.
Sometime between 4:00 and 4:30 a.m., at the sheriff's office, Detective Moore heard defendant make the statement, "I don't regret shooting the man tonight, he was just a punk." Detective Bulloch spoke to Mr. Holley at the station and observed no injuries on him. Billy Joe Eubanks, the booking sergeant at the jail, indicated on Mr. Holley's jail card that Holley had no cuts or bruises.
Walter Holley testified at trial as follows. He stated that, on the night of February 28, he and defendant had been at defendant's lounge from 7:00 p.m. until about 12:30 a.m., when she closed the lounge. They had each consumed fifteen or twenty drinks, and then went to L'Amica Chateau and had a few more drinks. After an hour and a half, they left the lounge and got in his car. A car, with its motor running, was double-parked behind him. Two people in the car were talking through the window to three other men. When the car did not move, Mr. Holley got out of his car and asked them to move. At least four of the men began hitting him, and he was knocked to the ground three times. Defendant got out of the car and screamed for them to leave him alone. She went back to the car, got a pistol and fired some warning shots. The men beat him up until he had a bloody nose and numerous lumps on his head. The car that was blocking Holley's car moved, and Mr. Holley and defendant got in their car to leave. They drove behind the building, but it was a dead-end. When they turned around and came back toward the street, the crowd tried to stop the car and threw beer cans at it. When he stopped the car before pulling out into traffic, defendant opened the door and fired another warning shot. When they left the lounge, they did not know that anyone had been hit. Mr. Holley testified that he would do anything to keep out of a fight because he had previously suffered a broken neck and has twenty percent of his skull missing as a result of a car wreck.
Defendant testified at trial on her own behalf. Her version of what occurred was, in all pertinent respects, the same as that of Mr. Holley. She stated that, the first time she shot the gun, she fired it two or three times up in the air. Defendant testified that she was frightened, and that, when she got out of the car and fired *523 again, she thought she fired into the air. She saw the victim fall, but thought he was playing a joke because everyone was standing around laughing. She denied making a statement at the sheriff's office that she did not regret shooting the victim.
Dr. Richard Tracy, a pathologist with the coroner's office, performed the autopsy on the victim. He testified that the victim died during surgery from a gunshot wound through the abdomen. He stated that the path of the bullet was front to back, from right to left, and was essentially a straight line level with the floor. Dr. Tracy concluded that, in his expert medical opinion, if you assume an erect standing position, the angle of the gun when it was fired was level with the floor.
On rebuttal, David Robinson reiterated that he watched the entire fight. Only two men were involved, and no one was ever knocked to the ground. When defendant and Holley were leaving the parking lot, no objects were thrown at the vehicle.

SUFFICIENCY OF EVIDENCE
In her sole brief assignment of error, defendant contends that there was insufficient evidence from which a trier of fact could find defendant guilty of the crime charged. Specifically, defendant claims that the state failed to establish that she had the necessary specific intent to kill or commit serious bodily injury when she fired the fatal shot.
We note initially that the appropriate procedural vehicle for urging insufficiency of the evidence is by motion for post-verdict judgment of acquittal. See La. Code Crim.P. art. 821; State v. Korman, 439 So.2d 1099, 1101 (La.App. 1st Cir.1983). However, we will review sufficiency of the evidence when argued in brief pursuant to a formal assignment of error.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard, which was adopted by the Louisiana Legislature in enacting La.Code Crim.P. art. 821 pertaining to post verdict motions for acquittal based on insufficiency of evidence, is that the appellate court must determine whether or not the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1(1). Although intent is a question of fact, it need not be proven as a fact and may be inferred from the circumstances of the transaction. La.R.S. 15:445. The evidence showing that defendant fired a lethal weapon, aimed in the direction of a crowd of innocent bystanders, is clearly sufficient to prove she had the specific intent to kill or to inflict great bodily harm. See State v. Mart, 419 So.2d 1216 (La.1982); State v. Johnson, 475 So. 2d 394 (La.App. 1st Cir.), writ denied, 478 So.2d 143 (La.1985).
Furthermore, the record does not support defendant's contention that she acted under strong provocation and in defense of her companion. At the time the fatal shot was fired, defendant and her companion were in the safety of their automobile. They were at the end of the parking lot at the street and could easily have just driven away. The action of defendant in getting out of the car and shooting back at the crowd was totally unnecessary.
The unanimous jury verdict indicates that it accepted the eyewitness' version of the events and rejected the self-serving testimony of defendant and Mr. Holley. Where there is conflicting testimony about factual matters, the resolution of which depends on the determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency. The determination of what weight to give the evidence rests solely within the discretion of the trier of fact. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. *524 Pleasant, 489 So.2d 1005, 1014 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986). It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Rosiere, 488 So.2d 965 (La.1986).
The evidence of record is sufficient to support the jury's verdict. This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.