[1] A jury found Leonard Thomas guilty as charged of second degree murder, LSA-R.S. 14:30.1. After denying post-trial motions, the district court sentenced him to a mandatory term of life imprisonment. Reserving six assignments of error, he now appeals. For the following reasons, we affirm. *West Page 1080 
[2] FACTS
[3] On the Easter Sunday afternoon of April 15, 1990, several hundred persons gathered at Bilberry Park in Shreveport. Late in the day, a fight erupted somewhere on the grounds. Immediately thereafter, when gunfire could be heard in the area, people began running in different directions for cover. During the bedlam, Leonard Thomas removed a .357 magnum revolver from the glove compartment of his friend's yellow Cadillac, and fired three shots into the crowd. Unfortunately, the victim found himself in the line of fire and, consequently, suffered a fatal gunshot wound to his head.
[4] Following the shooting, defendant apparently reentered the automobile and attempted either to empty or reload the weapon. Reports from the assemblage provided police with descriptions of both the gunman and the suspect car. When officers ordered all occupants from the vehicle in order to question the driver, defendant reentered the Cadillac and tried to leave the scene. Aided by congested traffic that hampered his exodus, however, authorities soon apprehended him.
[5] DISCUSSION
[6] Motion to Quash
[7] Three issues of the appeal are centered around defendant's effort to quash his indictment by means of a motion asserting a history of alleged racially discriminatory selection of grand jury forepersons. His first assignment of error contends the trial court erred in denying a request to reassign the Motion to Quash. In order to avoid the appearance of any impropriety or bias, Thomas reasoned, the merits of the matter should be decided by a judge never previously involved in the process of selecting grand jury forepersons. In support, defendant argued that the Criminal Rules of the First Judicial District Court allow cases to be temporarily reassigned for any proceeding with consent of the judges affected by the change.
[8] We note, first of all, that the reassignment procedure is discretionary. Second, although a motion to recuse may have been the more appropriate device, Thomas failed to file such a pleading. Of greater importance, however, there is no showing of any impropriety or bias with respect to this issue on the part of the trial judge. Nor is it demonstrated that Thomas failed to receive a fair and impartial hearing on the motion to quash. Thus, this assignment of error lacks merit.
[9] In challenging the ruling on the motion to quash (Assignment No. 2), defendant also asserts that the trial court erred in refusing to qualify his expert witness, a professor of criminology, to give an opinion in the field of statistics. Thomas did not brief this portion of his assignment, however. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v.Schwartz, 354 So.2d 1332 (La. 1978); State v.Kotwitz, 549 So.2d 351 (La.App. 2d Cir. 1989), writ denied,558 So.2d 1123 (La. 1990).
[10] Defendant grounded his motion to quash on assertions that his indictment emanated from a constitutionally flawed grand jury. He argues that a historical absence of black grand jury forepersons in Caddo Parish illustrates that the indictment proceedings effectively denied him the Fourteenth Amendment's due process and equal protection guarantees. Thomas submits that, upon establishing a prima facie case of racial discrimination in the selection of grand jury forepersons, the burden shifted to the state to rebut the resultant presumption by demonstrating that any pattern of underrepresentation of blacks resulted from a racially neutral selection procedure. Among other authorities, he cites Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979); Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); Guice v.Fortenberry, 722 F.2d 276 (5th Cir. 1984).
[11] Concerning a claim of racial discrimination as to the selection of grand jury forepersons in Rose v. Mitchell,
the Supreme Court indicated that, in accordance withCastaneda, a defendant must establish a prima facie case by proving: *West Page 1081 
[12] 1) that the group against whom discrimination is asserted is a recognizable, distinct class, singled out for different treatment;
[13] 2) the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called to serve as forepersons over a significant period of time; and
[14] 3) that the selection procedure is susceptible to abuse or is not racially neutral.
[15] See 443 U.S. at 565, 99 S.Ct. at 3005.[1]
[16] In the instant case, the first part of theCastaneda test has been established; the black race is a recognizable class capable of being singled out for different treatment. See State v. Young, 569 So.2d 570 (La.App. 1st Cir. 1990), writ denied, 575 So.2d 386 (La. 1991); State v.James, 459 So.2d 1299 (La.App. 2d Cir. 1984), writ denied,463 So.2d 600 (La. 1985). However, as we will subsequently indicate, proof of the second element of a prima facie case fails.
[17] In regard to the requisite "significant period of time," the trial court examined the years of 1979 to 1991, corresponding to the current district attorney's term of office. Considering that the grand jury indicted defendant in May 1990, we deem that interval sufficiently reasonable and significant. Obviously, one alleging discrimination may not prove his case by simply expanding the subject period of time until his position finds sufficient support.
[18] During the indicated period, registered black voters comprised 28 percent of the total number of registered voters in Caddo Parish. For the same years, among 25 grand jury foreman, six black citizens (24 percent) served in that capacity. Hence, when compared with the black voter population, underrepresentation in the position of foreperson is negligible.[2] Therefore, failing to meet the second prong of Castaneda, defendant did not establish a prima facie case, and no presumption of discrimination obtains.
[19] This assignment of error lacks merit.
[20] Motion for Mistrial
[21] As his third assignment, defendant cites error in the trial court's denial of his motion for mistrial. Maintaining that the position of his arms while discharging the weapon constituted a crucial fact or element (specific intent) of the case, Thomas objected when the state led Yolanda Smith on direct examination. Upon being asked how the suspect had held the gun, the witness demonstrated the position. Then, the prosecutor queried, "Arm just out straight?" At this point, the court sustained a defense objection and, with the jury excused, addressed a mistrial motion. Although terming the remark suggestive, the trial judge determined that it did not so prejudice defendant as to deny him a fair trial.
[22] When prejudicial conduct inside the courtroom makes it impossible for a defendant to obtain a fair trial, a mistrial may be granted. LSA-C.Cr.P. Art. 775. However, the determination of whether to order such a remedy is within the sound discretion of the trial judge, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. Statev. Smith, 433 So.2d 688 (La. 1983). *West Page 1082 
Mistrial, a drastic measure, should be ordered only where prejudice suffered by the defendant has deprived him of any reasonable expectation of a fair trial. Id.
[23] Defendant's immediate objection correctly came before the witness answered the question. Of course, the jury could see and evaluate for themselves the earlier arm position demonstration by Smith. Later, she again physically illustrated that part of her testimony, as did two other witnesses who observed defendant in the act of firing his weapon. Therefore, inasmuch as the prosecutor's remark did not deprive defendant of a fair trial, this assignment of error is meritless.
[24] Jury Instructions
[25] Defendant next contends that the trial court erred in refusing to include one of his special requested jury instructions in the general charge. Specifically, he sought to incorporate the following language:
[26] A specific intent to kill or inflict great bodily harm contemplates a carefully thought out design, scheme or plan and no one may be held to have acted with a specific intent to kill or inflict great bodily harm unless the evidence shows beyond a reasonable doubt that the defendant actually intended such design, scheme or plan to be accomplished by his acts.
[27] Specific intent can be proved to exist by competent evidence and cannot be presumed where there are no external signs of it beyond the mere fact of the killing.
[28] Pursuant to LSA-C.Cr.P. Art. 807, a requested special charge need not be given when it requires qualification, limitation, or explanation; when it is not wholly pertinent and correct; or when it is included in the general charge. In the present case, not only did the court quite adequately explain both specific and general criminal intent, but also the requested special instruction would have required further limitation. For example, the statement in the second paragraph, that specific intent "cannot be presumed where there are no external signs," could lead a jury to believe that specific intent cannot properly be inferred from the circumstances of the transaction and the actions of the defendant. Cf. State v. Boyer, 406 So.2d 143
(La. 1981); State v. Sanders, 431 So.2d 833
(La.App. 2d Cir. 1983), writ denied, 439 So.2d 1076 (La. 1983). Thus, in that the requested charge did not conform to the provisions of LSA-C.Cr.P. Art. 807, no error arises from its exclusion.
[29] Sufficiency of the Evidence
[30] In his final two assignments, defendant asserts that the trial court erred by denying his motions for new trial and postverdict judgment of acquittal.[3] Both arguments concern the sufficiency of the evidence.
[31] The criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all elements of the crime proved beyond a reasonable doubt.Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676
(La. 1984); State v. Chism, 436 So.2d 464 (La. 1983);State v. Lard, 568 So.2d 629 (La.App. 2d Cir. 1990). That standard, initially enunciated in Jackson, and now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence.State v. Smith, 441 So.2d 739 (La. 1983); State v.Willis, 446 So.2d 795 (La.App. 2d Cir. 1984). *West Page 1083 
[32] Furthermore, it is the function of the judge or jury to assess credibility and resolve conflicting testimony. Statev. Bonnett, 524 So.2d 932 (La.App. 2d Cir. 1988), writ denied, 532 So.2d 148 (La. 1988). Where the trier of fact has made a rational determination, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La. 1988);State v. Combs, 600 So.2d 751 (La.App. 2d Cir. 1992), writ denied, 604 So.2d 973 (La. 1992). Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. State v. Reaves, 569 So.2d 650 (La.App. 2d Cir. 1990), writ denied, 576 So.2d 25 (La. 1991); State v.Shepherd, 566 So.2d 1127 (La.App. 2d Cir. 1990); State v.Emerick, 499 So.2d 195 (La.App. 2d Cir. 1986).
[33] Although questioning the sufficiency of the evidence to support a verdict of second degree murder, Thomas does not deny that he fired the fatal gunshot. Rather, he argues that the state failed to prove, beyond a reasonable doubt, that he possessed the requisite specific intent to kill or inflict great bodily harm. Specifically, he maintains that the shooting occurred accidentally.
[34] In support of that contention, defendant asserts that no argument or hostility existed between the two men. Thus, he avers, the state showed no motive. Furthermore, defense counsel argues that the coroner's report, revealing that the bullet entered the victim's skull at an upward angle, supports Thomas's recorded statement that he closed his eyes while shooting the revolver into the air.
[35] Three witnesses, however, contradict defendant's version of the shooting. Lester Mitchell, who had parked about 14 feet from the yellow Cadillac occupied by Thomas, saw defendant fire the gun three times with his arm out straight and his eyes open. As Yolanda Smith walked across the park that day, she noticed fights breaking out and people running. Then, she observed defendant step out of a yellow Cadillac immediately in front of her and fire a pistol, two or three times, towards the park entrance. Although she demonstrated the gunman's position for the jury, the record does not clearly reveal to this court the manner in which she held her arms. Finally, Arrick Thomas watched as defendant exited a Cadillac and began firing some three or four times. This witness also testified that the man took level aim and shot toward the crowd of people.
[36] Although intent is a question of fact, it need not be proved as a fact and may be inferred from the circumstances of the transaction. State v. Kennington, 515 So.2d 521
(La.App. 1st Cir. 1987). In Kennington, the court determined that evidence showing the accused fired a lethal weapon, aimed in the direction of a crowd of innocent bystanders, clearly sufficed to prove specific intent to kill or inflict great bodily harm. A similar situation existed in the case before us.
[37] So then, when reviewed in a light most favorable to the prosecution, it is obvious that any rational trier of fact could have found defendant possessed the requisite specific intent to kill or inflict great bodily harm. These two assignments of error thus also lack merit.
[38] CONCLUSION
[39] Accordingly, for the foregoing reasons, the defendant's conviction and sentence are affirmed.
[40] AFFIRMED.
[1] Interestingly, the Supreme Court in Rose v. Mitchell,supra, "assume[s] without deciding" that discrimination in reference to selection of only the grand jury foreman requires that a subsequent conviction be overturned. See 443 U.S. at 551, 99 S.Ct. at 2998, n. 4. While obviously bound by superior court decisions on the subject, we consider the views of Justices Rehnquist, Stewart and Powell, expressed by concurrences in Rose, quite persuasive. Noting that grand juries do not decide the ultimate issue of guilt or innocence, these Justices maintain that, after convicted beyond a reasonable doubt before a constitutionally valid trial jury, a defendant can hardly complain of possible prejudice suffered at the hands of an invalid grand jury.
[2] In view of the present disposition, we do not address another consideration, namely, that not all registered voters will necessarily fulfill the qualifications of a juror. See LSA-C.Cr.P. Art. 401, 413. If the relevant figure to consider is the percentage of minority persons who are qualified to serve as jurors or grand jurors, cf. State v. Young, supra, then disparities based on such a comparison may well be less than when determined by calculating the minority presence within the total registered voter population.
[3] Defendant's fifth assignment is based upon the denial of a motion for new trial that asserted the verdict to be contrary to the law and the evidence. See LSA-C.Cr.P. Art. 851(1). In response to such a motion, only the weight of the evidence may be reviewed by the trial judge. State v. Korman, 439 So.2d 1099
(La.App. 1st Cir. 1983). See also Tibbs v. Florida,457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Moreover, the refusal to grant such a motion is not subject to appellate review. LSA-C.Cr.P. Art. 858; State v. Korman, supra. In any event, defendant's argument centers around the question ofsufficiency of evidence, an issue that properly should be posed by a motion for postverdict acquittal. See LSA-C.Cr.P. Art. 821. Here, of course, that procedural device proved unsuccessful, as explained above.
[41] APPLICATION FOR REHEARING
[43] Rehearing denied. *West Page 1084