645 So.2d 1193 (1994)
STATE of Louisiana, Appellee
v.
Corey GUICE, aka Guice, Appellant.
No. 26440-KA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1994.
Rehearing Denied December 1, 1994.
*1194 John Focke, Monroe, for appellant.
Jerry Jones, Dist. Atty. and Charles Cook, Asst. Dist. Atty., Monroe, for appellee.
Before LINDSAY, BROWN and STEWART, JJ.
BROWN, Judge.
A jury found Corey Guice guilty as charged of second degree murder, LSA-R.S. 14:30.1. Defendant was thereafter sentenced to a mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence. Defendant filed a motion for a new trial, which was subsequently denied by the trial court. Reserving three assignments of error, he now appeals. For reasons stated below, we affirm.

FACTS
On May 8, 1992, Jerry Butler was beaten to death outside a home he was visiting in Monroe, Louisiana. Butler had been asked to step out of the house by defendant, Corey Guice. While the chain of events is not entirely clear, the consensus of the testimony adduced at trial indicated that defendant struck Butler in the head at least one time *1195 with a baseball bat. Defendant and two companions, Gerald Thompson and Robert Shaw, then fled the scene. Butler died three days later.
Thompson and Shaw were apprehended almost immediately. Each gave a statement to police indicating that he had been picked up by Guice, who had offered them a ride. The trio cruised the area, ultimately stopping at a house on Short Thomas Street in Monroe. According to Thompson and Shaw, defendant exited the vehicle alone, entered the house and later exited, followed by Mr. Butler. An altercation ensued and, at some point, defendant retrieved a baseball bat from his car. While Thompson and Shaw watched from the car, defendant struck Butler with the bat.
Cynthia Gardener occupied the house on Short Thomas Street where the altercation occurred. In an initial statement to police, Ms. Gardener stated that she too saw defendant strike Butler with a bat. However, she also stated that she saw Thompson and Shaw involved in the melee. Based upon her statement, the two men were charged with second degree murder. Defendant was apprehended approximately one month after the incident and was likewise charged with second degree murder.
Eventually, the state dismissed the charges against Thompson and Shaw due to a lack of evidence. In October 1993, a trial was had in which Gardener and former codefendants, Thompson and Shaw, testified against defendant. A jury found Guice guilty as charged and sentenced him to life imprisonment.
Following sentencing, defendant filed a motion for new trial on the grounds that the verdict was contrary to the law and evidence and that new and material evidence previously undiscovered had come to light that might change the verdict. This alleged new evidence concerned a possible undisclosed deal between prosecutors and former codefendants, Thompson and Shaw, involving an exchange of testimony for dismissed charges. Following a hearing on December 21, 1993, defendant's motion was denied. Defendant appeals, urging the following assignments of error:
1) The verdict is contrary to the law and the evidence;
2) The evidence does not sustain the verdict;
3) The court erred in failing to sustain defendant's request for a new trial based upon prosecutorial misconduct.

DISCUSSION

The Weight of the Evidence
In his motion for new trial, defendant claims that the verdict is contrary to the law and the evidence. See LSA-C.Cr.P. Art 851(1). In response to such a motion, only the weight of the evidence may be reviewed by the trial judge. State v. Thomas, 609 So.2d 1078 (La.App.2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). See also Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Moreover, the refusal to grant such a motion is not subject to appellate review. LSA-C.Cr.P. Art. 858; State v. Thomas, supra; State v. Korman, supra.
While defendant's motion itself alludes to this ground in support of a new trial, defendant did not address this contention in the memorandum in support of his motion. Furthermore, defendant failed to present any argument concerning this ground for new trial at the hearing on the motion. Defendant's failure to support and argue this basis for new trial resulted in the trial court's refusal to grant the motion on the proffered ground. Such refusal is not subject to appellate review and we therefore decline to entertain this assignment of error.

The Sufficiency of the Evidence
The preferable procedural vehicle for raising the issue of sufficiency of the evidence is by a motion in the trial court for post-verdict judgment of acquittal. LSA-C.Cr.P. Art. 821. Defendant did not present the sufficiency issue to the trial court, but raises it on appeal by arguing that the evidence does not support the verdict. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard *1196 of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App.2d Cir.1992), writ denied, 605 So.2d 1089 (La. 1992). The standard enunciated in Jackson and legislatively embodied in LSA-C.Cr.P. Art. 821 is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Thomas, supra; State v. Willis, 446 So.2d 795 (La.App.2d Cir.1984).
The assessment of credibility and resolution of conflicting testimony remain functions to be exercised by the jury. State v. Klar, 400 So.2d 610 (La.1981); State v. Thomas, supra; State v. Bonnett, 524 So.2d 932 (La.App.2d Cir.1988), writ denied, 532 So.2d 148 (La.1988). Where the trier of fact has made a rational determination, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Thomas, supra; State v. Combs, 600 So.2d 751 (La.App.2d Cir.1992), writ denied, 604 So.2d 973 (La.1992). In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient to support the requisite factual conclusion. State v. Thomas, supra; State v. Reaves, 569 So.2d 650 (La.App.2d Cir.1990), writ denied, 576 So.2d 25 (La.1991); State v. Shepherd, 566 So.2d 1127 (La.App. 2nd Cir. 1990).
Second degree murder is defined in part as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1(A)(1). To support a conviction of second degree murder, the state must show that defendant had specific intent to kill or inflict great bodily harm. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the proscribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990), and reh'g denied, 495 U.S. 966, 110 S.Ct. 2579, 109 L.Ed.2d 761 (1990).
Defendant does not deny that he struck Butler with a baseball bat. Rather, he testified that Butler wielded the bat first and fell while attempting to strike defendant. While Butler was down, defendant claims to have gained control of the bat and struck the victim as he grabbed for defendant's legs. Defendant testified that Thompson also struck Butler with the bat and that Shaw hit the victim with a bottle.
The bulk of the testimony presented at trial contradicts defendant's version of the facts. Cynthia Gardener testified that she lived at the Monroe address where the incident took place. According to Ms. Gardener, the victim was at her house when defendant arrived. Defendant asked Butler to step outside. Ms. Gardener later heard "rumbling" and stepped outside to discover the source. There she saw four males involved in a fight. While two of the men appeared to hold the victim, Ms. Gardener saw defendant strike Butler with a baseball bat. She testified that the victim was not armed, nor were there weapons on the ground.
Ouachita Parish Sheriff's Deputy Larry Ludlow testified that he got the names of three suspects from an unidentified black male while visiting the crime scene. Those suspects were defendant, Thompson and Shaw.
Robert Shaw testified that defendant offered him and Thompson a ride. Ultimately, they arrived at a home located on Short Thomas Street. Defendant exited the car and returned later, followed by Butler. The two men talked briefly before defendant returned to the car, retrieved a baseball bat and struck Butler in the upper part of his body. Defendant struck Butler a second time, at which time Shaw and Thompson exited the car and attempted to separate the fighting parties. While Shaw tried to assist the victim and Thompson attempted to calm defendant, Ms. Gardener came upon the scene. Although Thompson tried to restrain *1197 defendant, he broke free and struck Butler in the head with the bat.
Gerald Thompson testified that after defendant picked him and Shaw up, they eventually arrived at Short Thomas Street. Defendant went into the house and came out with the victim behind him. He then came to the car and retrieved a baseball bat which he laid on the car's fender. The men talked for a while and defendant grabbed the bat and hit Butler. The victim fled across a ditch with defendant in pursuit. When defendant struck Butler a second time, Thompson and Shaw tried to intervene. Thompson tried to restrain defendant; however, defendant broke free and struck Butler one more time with the bat before departing.
Both Thompson and Shaw testified that they had been previously arrested and charged in the case. Both admitted giving statements to the first attorney retained by defendant. Thompson admitted that the statement he gave to this attorney differed from that given to police and at trial. However, Thompson indicated that his initial statement was made pursuant to defendant's request and in accordance with a version of the facts fabricated by defendant. Assistant District Attorney John Ruddick testified that no deal had been arranged in exchange for the former codefendants' testimony.
Dr. George McCormick testified concerning the results of an autopsy performed following the death of Butler. The cause of death was brain injuries resulting from multiple blows to the head with a blunt object, possibly a baseball bat. Noting the absence of glass shards in the victim's wounds, Dr. McCormick specifically ruled out the possibility that the weapon could have been a bottle.
On cross examination, defendant admitted that he owned a baseball bat which he carried in his car for personal protection. While this was defendant's admitted "weapon of choice," he testified that on the night of the incident, the bat's whereabouts were unknown.
This evidence, viewed in the light most favorable to the prosecution, indicates that defendant struck the victim several times in the head with a baseball bat, using sufficient force to cause brain injuries and resulting death. Although intent is a question of fact, it need not be proven as a fact and may be inferred from the circumstances. State v. Thomas, supra; State v. Kennington, 515 So.2d 521 (La.App. 1st Cir.1987). The severity of an attack in which a victim is bludgeoned to death with a baseball bat is sufficient to demonstrate the necessary specific intent to kill or inflict great bodily harm for second degree murder. See State v. Myers, 584 So.2d 242 (La.App. 5th Cir.1991), writ denied, 588 So.2d 105, and cert. denied, ___ U.S. ___, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992). Viewed in a light most favorable to the prosecution, this evidence is sufficient to prove beyond a reasonable doubt that Corey Guice killed Jerry Butler while possessing the specific intent to kill or inflict great bodily harm. The jury assessed the credibility of the witnesses, the veracity of their testimony and returned a verdict rationally related to the evidence presented. Defendant's assignment challenging the sufficiency of the evidence is thus without merit.

Prosecutorial Misconduct
In a final assignment of error, defendant asserts the trial court's error in failing to sustain his request for new trial based on prosecutorial misconduct. Defendant claims that he was prejudiced by the state's failure to disclose the existence of an alleged deal arranged by the prosecution and former codefendants, Thompson and Shaw. Specifically, defendant alludes to the proceeding during which the charges against the codefendants were dismissed. Defendant urges that what transpired on the record is evidence of a deal that was not disclosed by the prosecution. Defendant argues that failure to provide notice of the alleged deal resulted in less effective impeachment of Thompson and Shaw as witnesses for the state.
Defendant's argument is based upon the proposition announced in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that suppression by the prosecutor of material evidence favorable to the accused justifies a new trial irrespective of the good or bad faith of the prosecution. Critical to a reliance upon Brady is a showing that *1198 the prosecutor has indeed suppressed material evidence. In support of its ruling, the trial court noted that the entire dismissal proceeding was a matter of record. Furthermore, defendant and his attorney were present when the charges against the codefendants were dismissed. If, as alleged, the "deal" was stated in court, it would be illogical to conclude that its existence was suppressed or withheld from defendant, who was present with his attorney throughout the proceeding.
The trial judge, however, also concluded that there was never a deal between the prosecution and the former codefendants. Testimony from the attorneys representing Thompson and Shaw indicated that no negotiations had occurred between the parties. There was no quid pro quo between the opposing sides and the dismissal of the charges was characterized as a unilateral act on the part of the prosecutor. While the language used by the prosecutor during the dismissal proceeding included its determination to require these codefendants to testify, the trial judge correctly concluded that this was merely a poor choice of words to describe the circumstances.
Based upon the foregoing, we conclude that defendant's third assignment of error does not demonstrate an error of law committed by the trial judge in his refusal to grant the motion for new trial. We are therefore precluded from exercising any further review of defendant's third assignment under the express terms of LSA-C.Cr.P. Art. 858.

CONCLUSION
The evidence presented at trial, when reviewed in a light most favorable to the prosecution, is clearly sufficient to allow a rational trier of fact to conclude that Corey Guice killed Jerry Butler while possessing the specific intent to kill or inflict great bodily harm. Defendant's remaining assignments of error present nothing for review by this court. Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, LINDSAY, VICTORY, BROWN and STEWART, JJ.
Rehearing denied.