815 So.2d 402 (2002)
STATE of Louisiana
v.
Darron HARRIS.
No. 2001-KA-1908.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 2002.
Rehearing Denied April 30, 2002.
*404 Karen G. Arena, Louisiana Appellate Project, River Ridge, LA, and Anderson Council, New Orleans, LA, for Defendant/Appellant.
Harry F. Connick, District Attorney, William L. Jones, III, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR.).
Judge TERRI F. LOVE.
Defendant Darron Harris was charged by bill of information on March 23, 2001, with two counts of armed robbery, violations of La. R.S. 14:64, four counts of first degree robbery, violations of La. R.S. 14:64.1, and one count of attempted first degree robbery, a violation of La. R.S. 14:27(64.1). Defendant pleaded not guilty as to all counts at his March 28, 2001 arraignment. On April 4, 2001, a hearing was held on a motion to suppress identification. After testimony from two victim-witnesses, the matter was reset until April 11, 2001. On April 11, 2001, counts two and four were amended from first degree robbery to attempted first degree robbery, and defendant was re-arraigned as to those counts. The record reflects no ruling on the motion to suppress the identification.
On May 16, 2001, defendant proceeded to trial by a twelve-person jury on five of the seven counts, and was found guilty as charged on two counts of armed robbery, guilty of the lesser offense of attempted simple robbery as to a count of attempted first degree robbery, guilty as charged of first degree robbery, and not guilty of attempted first degree robbery. On June 27, 2001, one count of attempted first degree robbery and one count of first degree robbery were nolle prosequied. That same date defendant was sentenced to fifty years at hard labor on each of the armed robbery convictions, without benefit of parole, probation or suspension of sentence, three and one-half years at hard labor on the attempted simple robbery conviction, and twenty-five years at hard labor on the first degree robbery conviction, without benefit of parole, probation or suspension of sentence. The trial court subsequently adjudicated defendant a second-felony habitual offender, vacated the original sentences, and resentenced defendant as a second-felony habitual offender, imposing the same sentences originally imposed, to run consecutively. The trial court denied defendant's motion to reconsider sentence, and granted defendant's motion for appeal.
Monica Butler Dillon testified that on December 6, 2000, between 9:00 and 10:00 p.m., she was walking with her three-year-old daughter from her parking place to her apartment in a complex on Roger Drive. She noticed the shadow of a person overtaking *405 her, and she turned around to see defendant, who demanded her purse. Defendant had his hand in his jacket pocket, as if he had a gun. The victim picked defendant's photograph out of a lineup shown to her by Det. Patrolia. She later identified the defendant in court as the person who tried to rob her. On cross-examination, Ms. Dillon testified that although it was dark, there was sufficient lighting in the parking area, and said she told police the would-be robber was dark-complected, five feet nine inches tall, with a small build and short afro hairstyle. She said that he was wearing dark denims and a dark fleece-type jacket.
Cheryl Williams testified that she, her husband and their daughter were returning to their Roger Drive apartment on January 11, 2001, at approximately 8:30 p.m., when defendant robbed them. She was getting out of the car with her daughter, when defendant approached them and asked for her purse. She said she did not have any money, and defendant countered that she did, and threatened to shoot her daughter. Mrs. Williams gave defendant ten or twenty dollars, and he demanded more, telling her to ask her "man," referring to her husband, Eric Williams. Eric Williams had been fumbling around in the back seat, and Mrs. Williams called out to him, telling him that defendant wanted their money. Eric Williams said he did not have any money, but suggested that the robber take their leather jackets and sell them. Defendant then fled. Mrs. Williams said she never saw a gun, but that defendant threatened to shoot her if he did not give him her purse, and that he had his hand behind him, as if it were in his back pocket. Both Cheryl and Eric Williams selected defendant's photograph in the lineup conducted by Det. Patrolia, and identified the defendant in court as the person who robbed them. Mrs. Williams admitted on cross examination that when shown the photographic lineup she believed one photo was of a person suspected by police as being the person who robbed her.
New Orleans Police Detective David Patrolia testified that he prepared a photographic lineup containing defendant's photo, which he displayed to Monica Butler on January 21, 2001. Ms. Butler positively identified defendant as the person who robbed her on Roger Drive. Det. Patrolia displayed another lineup containing defendant's photo to Cheryl Williams and her husband Eric. Both the victim and her husband viewed the lineup separately, and each positively identified defendant.
Tina Jones testified that defendant robbed her on November 29, 2000. Ms. Jones, then five months pregnant, was getting her two children out of the car after coming home from work that night, when defendant approached her and demanded her purse. He apologized for robbing her in front of her children, but when she hesitated, he raised his shirt to display a gun. After getting her purse and beginning to walk off, he asked her how much money she had in her purse. She said she had $100, when she actually had $400 in cash and a $100 check. The defendant became agitated and pulled out his gun. Ms. Jones estimated that the encounter lasted between fifteen to twenty minutes. Ms. Jones identified defendant's photograph in a lineup presented to her by Det. Wharton, and later identified him in court as the person who robbed her.
New Orleans Police Detective Danny Wharton testified that after defendant was arrested, he presented a photo lineup containing defendant's photo to Tina Jones, and she selected defendant's photograph.
Shanicka Reaux testified that on December 14, 2000, she entered her apartment, put down her grocery bags, and walked *406 back toward her front door to find defendant in her living room holding her purse. He said he was robbing her, and took out a gun when she expressed disbelief. He took money from her purse, and asked for more. She said she had money in her car, and he took her car key and purse and fled. On January 18, 2001, she selected defendant's photograph from a lineup. She later identified defendant in court as the person who robbed her.
New Orleans Police Detective Hope McKee testified that on December 14, 2000, she investigated the armed robbery of Shanicka Reaux. She developed defendant as a suspect based on his arrest for another robbery in the area, and his description. She presented a photo lineup to Shanicka Reaux, who selected defendant's photograph.
Colin Hebert testified that on January 17, 2000, defendant attempted to rob him. He was sitting on his car in front of his home, when defendant approached and asked for his brother, by name. Mr. Hebert said his brother was not home, and then defendant demanded money, putting his right hand underneath his shirt as if he had a weapon. Mr. Hebert said he had no money, and defendant expressed disbelief that Mr. Hebert was in front of his home and had no access to money. Mr. Hebert eventually said he would get some money inside. Mr. Hebert walked to his front door, and the man demanded the cordless telephone that was in his rear pocket. Mr. Hebert, by then inside of his front door, argued with the man for a couple of minutes before slamming and locking the door and telephoning police. Police apprehended defendant and returned him to the scene, where Mr. Hebert identified him as the person who had attempted to rob him. He later identified defendant in court as the person who attempted to rob him.
New Orleans Police Officer Kevin Jackson testified that he arrested defendant on January 17, 2001, after detaining him and getting an identification from Mr. Hebert. Officer Jackson stated that as defendant was stepping over to the police car after being stopped, he threw up his hands, asked why he was being stopped, and said he did not rob anybody. Officer Jackson admitted on cross-examination that no gun was ever found on defendant's person.
Defendant testified on his own behalf, against the advice of his defense counsel, and after being questioned by the trial court as to his decision to testify. Defendant testified that he was twenty-five years old, had a GED high school diploma, and Job Corp training in business office technologies. He said Henry's Soul Food and Pie Shop employed him during the period of November 2000 through January 2001. He denied robbing any of the victims. Defendant said he knew Colin Hebert, and admitted talking to Mr. Hebert that night. He denied attempting to force Mr. Hebert to give him any money.
A review of the record reveals no errors patent.
In defendant's sole assignment of error, he claims that he received ineffective assistance of counsel because trial counsel: (1) failed to pursue pretrial motions; (2) failed to effectively cross examine witnesses during trial; (3) failed to investigate mitigating factors to present at sentencing or request a presentence investigation report; (4) inadequately prepared for trial; and (5) failed to advise defendant of his right to a trial by judge.
"As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted." State v. Howard, 98-0064, p. *407 15 (La.4/23/99), 751 So.2d 783, 802. However, where the record is sufficient, the claims may be addressed on appeal. State v. Bordes, 98-0086, p. 7 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147. Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail, the defendant must show both that: (1) counsel's performance was deficient; and (2) he was prejudiced by the deficiency. State v. Jackson, 97-2220, p. 8 (La. App. 4 Cir. 5/12/99), 733 So.2d 736, 741. Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Ash, 97-2061, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different; "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 693, 104 S.Ct. at 2068.
This Court has previously recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." Bordes, 98-0086 at p. 8, 738 So.2d at 147, quoting State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." Id., quoting State v. Brooks, 505 So.2d 714, 724 (La.1987).

Pretrial Motions:
Defendant claims his trial counsel was ineffective in failing to move to suppress the various identifications of him by witnesses. While the record does not contain any written motion to suppress any of the identifications, a minute entry states that a hearing on a motion to suppress identifications was held on April 4, 2001. The minute entry states that the State presented the testimony of Shanicka Reaux and Monica Butler, two of the victims of crimes for which defendant was ultimately convicted. The minute entry then states that the matter was reset for April 11, 2001. The minute entry from April 11 reflects that two counts were amended, and defendant was re-arraigned on them, that defense counsel received a copy of the police report, and then withdrew all discovery motions and the motion for a preliminary hearing. However, the record contains a transcript of a preliminary hearing that was held in magistrate court on March 6, 2001, prior to appointment of counsel who represented defendant at and after arraignment. The record does not reflect that the trial court ever ruled on a motion to suppress. It is possible that trial counsel read Det. Wharton's testimony from the previously held preliminary hearing, considered the evidence adduced from two of the victims at the motion to suppress hearing, and determined that pursuit of the motion to suppress the identifications would be an exercise in futility.
In any case, a defendant bears the burden of proving that an out-of-court identification was suggestive, and that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Ballett, 98-2568, p. 17 (La.App. 4 Cir. 3/15/00), 756 So.2d *408 587, 597, writ denied, XXXX-XXXX (La.2/9/01), 785 So.2d 31. An identification procedure is suggestive if it focuses attention on the defendant. State v. Laymon, 97-1520, p. 16 (La.App. 4 Cir. 3/15/00), 756 So.2d 1160, 1172, writs denied, XXXX-XXXX (La.5/4/01), 791 So.2d 648, XXXX-XXXX (La.5/11/01), 791 So.2d 1288. However, even a suggestive identification will be admissible if it is found reliable under the totality of circumstances. Id. In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court set forth a five-factor test to determine whether an identification is reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. State v. Green, 98-1021, p. 12 (La.App. 4 Cir. 12/22/99), 750 So.2d 343, 350.
Defendant was convicted on the four counts in which his photograph was selected from photo lineups presented by police to the four victims. Defendant does not assert that any of the identification procedures were suggestive, the threshold burden a defendant must meet in suppressing an out-of-court identification procedure. Nor does he cite any evidence that the identifications were suggestive. Thus, defendant has failed to meet his burden of proving ineffective assistance of counsel because he has not shown that there is a reasonable probability that, but for any failure on the part of trial counsel to pursue motions to suppress the identifications, the outcome of the proceeding would have been different. Nor is there any merit to defendant's speculative argument that had a hearing been held more facts might have been developed in support of the motion, and counsel would have obtained valuable discovery from the victims so as to be able to more effectively cross-examine them at trial. This argument does not suffice to meet defendant's burden of showing that but for this deficiency, there is a reasonable probability that the outcome would have been different. Further, victims of two of the four robberies for which defendant was convicted did testify at a motion to suppress hearing.
Defendant claims trial counsel was deficient in failing to file a motion to suppress the statement he made to Officer Jackson after being stopped in connection with the robbery of Colin Hebertthat he did not rob anyone. However, defendant was acquitted of the charge that he robbed Mr. Hebert. Defendant fails to suggest how it could be that there is a reasonable probability that, but for trial counsel's failure to move to suppress this statement, the outcome of the proceeding, insofar as the other charges, would have been different. Moreover, it was an entirely voluntary and spontaneous statement, blurted out by defendant as he was stepping over to the police car at the instigation of the stop. A spontaneous and voluntary statement, not given as a result of police interrogation or compelling influence, is admissible in evidence without Miranda warnings even where a defendant is in custody. State v. Smith, 2000-18, p. 4 (La.5/25/01), 785 So.2d 815, 817.

Failure to effectively cross examine witnesses during trial:
Defendant next asserts that trial counsel failed to effectively cross examine witnesses during trial as to his or her ability to view the perpetrator due to lighting conditions, eye sight limitations and length of time the perpetrator was viewed. He argues that trial counsel failed to effectively *409 highlight the fact that most of the identifications were made weeks after the incident, and none of the victims provided a detailed description of the suspect at the time of the incident. Finally, defendant argues that most importantly, counsel failed to emphasize with each victim his or her failure to notice defendant's freckles, his facial scar and his chipped tooth.
There is no merit to this argument. The record reflects that trial counsel adequately cross-examined the victims who testified. He asked Monica Butler about the time of the robbery, whether it was dark, and the date of the robbery versus the date of her photo identification of defendant. He quizzed her about the description of the suspect she gave to police. He asked her if she remembered anything "outstanding" about defendant, and then defendant took the stand and testified about his freckles, chipped tooth and scar over his eye.
Trial counsel asked Cheryl Williams about the ten-day delay between the robbery and her photo identification of defendant. He asked what time the robbery occurred, and asked if it was dark. He asked a number of other questions, but did not ask about any description of the suspect. The minute entry reflects that trial counsel received the police reports in this case. If the police report in Mrs. Williams' case reflected that person who robbed her had a chipped tooth, freckles and a facial scar, naturally trial counsel would not want to bring this out before the jury. Mrs. Williams was very close to defendant, as she handed him money. She testified that she identified him because she remembered his face.
Trial counsel's cross-examination of Mrs. Williams' husband, Eric Williams, was sparse. However, it was clear that he was the weaker witness, his wife having been the one who was actually robbed, while he was cleaning out the car.
Like Mrs. Williams, Tina Jones handed defendant her purse, so she was obviously very close to him. She testified on direct examination that the robbery occurred at night, between 9:00 and 9:30 p.m. She estimated on direct examination that defendant was talking to her and demanding her purse for fifteen or twenty minutes. Trial counsel questioned her as to her ability to recall the gun, and asked whether there was anything distinctive about the man who robbed her. He asked what was distinctive about "this face," apparently meaning the face depicted in defendant's photograph.
Shanicka Reaux testified on direct examination that she was robbed on December 14, 2000, and made her photo identification of defendant on January 18, 2001. She also said it happened inside of the living room of her apartment, where she was face to face with the defendant. They were very close at one point, as she handed him her car key. Trial counsel had already heard Ms. Reaux testify at the motion to suppress hearing. His questioning of her was very sparse, but defendant fails to show that this was not a trial tactic, as perhaps further questioning would have served only to strengthen her credibility as a witness. Perhaps Ms. Reaux testified at the motion to suppress hearing that she remembered defendant's freckles, chipped tooth, and scar over his eye. Defense counsel got her to admit that the detective who presented her with the photo lineup wanted her to pick out someone. Defendant has failed to show that there is a reasonable probability that, but for any deficient cross-examination on trial counsel's part, the outcome would have been different.

*410 Failure to present mitigating evidence at sentencing or order PSI:

Defendant claims that trial counsel did not request a presentence investigation report on defendant, or attempt to point out to the court any mitigating factors, such as that he was only twenty-five years old, was gainfully employed, had his GED, did not physically harm any of his victims, and was in fact apologetic about scaring the children. Defendant admits that he received the minimum or near minimum sentence he could have received on each count, but an effort by trial counsel to humanize defendant "would have convinced the judge not to impose the sentences consecutively." Finally, defendant asserts that a thorough inquiry "may have provided a basis for imposing sentences below the mandatory minimum."
In State v. Lee, 98-0087 (La.App. 4 Cir. 3/24/99), 735 So.2d 715, the defendant received a mandatory life sentence pursuant to the Habitual Offender Law. On appeal, he argued ineffective assistance of counsel on the ground that his defense counsel had failed to offer any evidence in mitigation of his life sentence. This Court held that because defendant failed to suggest any mitigating evidence which defense might have presented at his sentencing, he had not been prejudiced by defense counsel's failure to investigate his background. Thus, a general assertion that trial counsel failed to introduce unspecified mitigating factors at sentencing cannot support a claim of ineffective assistance of counsel. Only factors suggested by defendant will be considered.
In sentencing defendant, the trial court noted that the four crimes for which defendant was convicted involved criminal activity on four separate and distinct dates. Thus, unless the court expressly directed otherwise, the law provides that the sentences were to be served consecutively. La.C.Cr.P. art. 883.
The entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. See State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343.
While defendant claims he had no prior history of violence, the State informed the court that defendant had a prior conviction for carrying a concealed weapon, in addition to the conviction for possession of a stolen automobile for which he was adjudicated a second-felony habitual offender. The trial court presumably was aware that no one had been injured in any of the robberies; otherwise it would not have imposed minimum sentences. It can be presumed that the trial court knew defendant's age, for one's date of birth is used for identification purposes in the criminal justice system. As far as trial counsel failing to remind the court that one victim testified that defendant apologized for robbing her at gunpoint in front of her children, perhaps trial counsel was afraid to do so for fear that the State would in turn remind the court that another victim testified that during her robbery *411 defendant threatened to shoot her child if she did not give him money. This failure to remind would have been a wise tactic on the part of trial counsel.
Defendant is left with the argument that there is a reasonable probability that but for trial counsel's failure to inform the trial court that he had a GED and had been gainfully employed, the trial court would have run his sentences concurrently, and found that he had proved by clear and convincing evidence that the minimum sentences under the Habitual Offender Law were unconstitutionally excessive as applied to him, i.e., that he was exceptional, meaning that because of unusual circumstances he was a victim of the legislature's failure to assign sentences that were meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. There is no merit to this argument.

Inadequate preparation for trial:
Defendant claims he had several alibi witnesses to whom trial counsel did not speak. Defendant claims trial counsel performed no investigation into his whereabouts on the dates and times of the crimes, and asserts that the case went from indictment to trial in six weeksit was actually seven and one half weeks. Defendant asserts that his employer would have testified that the robberies occurred while he was either at work or out of town in Atlanta. Defendant maintains his sister, mother, and his employer's wife, would have corroborated this. The record is insufficient to resolve this matter on appeal. Defendant's right to assert these particular grounds of ineffective assistance of counsel is preserved 15so that he can raise them on application for post conviction relief filed in the trial court, where a hearing can be held.

Failure to advise defendant of his right to trial by judge:
Defendant claims that he would have chosen a judge trial had counsel told him he had a right to one. The minute entry from the date of trial states that defendant "elected to be tried by a jury of his peers." The minute entry from arraignment reflects that defendant was advised of his "constitutional rights" after he was appointed counsel. Another minute entry reflects that defendant again was advised of his "constitutional rights" as to two of the counts after those two were amended. The right to trial by judge or jury is a constitutional right. A defendant charged with an offense other than one punishable by death shall be informed by the court at arraignment of his right to waive trial by jury. La.C.Cr.P. art. 780. Nevertheless, the record does not reflect that in fact defendant was advised of his right to trial by judge, either by the trial court or by defense counsel. Again, defendant's right to assert these particular grounds of ineffective assistance of counsel is preserved so that he can raise them on application for post conviction relief filed in the trial court, where a hearing can be held.
For the foregoing reasons, defendant's convictions and sentences are affirmed, reserving to defendant the right to raise by application for post conviction relief his claim of ineffective assistance of counsel as to trial counsel's failure to investigate his case and present alibi witnesses, and the failure to advise him of his right to a bench trial.
AFFIRMED.