976 So.2d 315 (2008)
STATE of Louisiana, Appellee
v.
Chester Lee KINSEY, Appellant.
No. 42,935-KA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*316 James E. Beal, Jonesboro, for Appellant.
Chester Lee Kinsey, Pro Se.
Walter E. May, Jr., District Attorney, Hubert R. Davis, Kenneth P. Haines, Assistant District Attorneys, for Appellee.
Before BROWN, WILLIAMS and LOLLEY, JJ.
WILLIAMS, J.
The defendant, Chester Kinsey, was charged by grand jury indictment with aggravated rape, a violation of LSA-R.S. 14:42. After a jury trial, the defendant was found guilty as charged. Defendant's motions for new trial and for post verdict judgment of acquittal were denied. The trial court sentenced defendant to serve the mandatory term of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant appeals his conviction. For the following reasons, we affirm.

FACTS
On November 22, 2003, in Ringgold, Louisiana, seven-year-old MM informed her adult cousin, S.A., that the defendant (the brother of the child's caretaker) had placed his penis in the child's anus. S.A. reported the matter to the Bienville Parish Sheriff's Office ("BPSO"), and the child wrote out a statement to the BPSO naming defendant as the offender.
Several days later, Dr. Ann Springer, a pediatrician at LSUHSC, performed a physical examination of MM. The examination was unremarkable except for the anal exam. Dr. Springer testified that she "noted fissuring which are cracks in the surface of the tissue surrounding the anus," and that the injuries were still in the process of healing. The child told the doctor that defendant had, among other sexual acts, "put his thing in my butt."
*317 Subsequently, the defendant was arrested and charged with aggravated rape. During her testimony, the victim, who was eleven years old at the time of trial, described several incidents of abuse by the defendant. In particular, the child testified that on one occasion in November 2003, she was lying down on her grandmother's couch when the defendant came into the room, removed her underwear and placed his penis in her anus, an act the child described as painful. At trial, the child identified the defendant as the man who raped her. The defendant testified in his own defense. He admitted his prior convictions for distribution of cocaine and for simple robbery, but he denied any sexual contact with MM. The jury, believing the child's testimony, found the defendant guilty of aggravated rape. As stated above, the defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. This appeal followed.

DISCUSSION
The defendant contends the trial court erred in denying a continuance in which to obtain the appearance of a critical defense witness. Defendant argues that the court's failure to allow a reasonable period of time in which to produce the witness effectively denied defendant the right to confront his accusers.
When a trial has already commenced at the time it becomes apparent that a witness is unavailable, any delay in the proceedings would be referred to as a recess rather than a continuance. LSA-C.Cr.P. art. 708; State v. Spears, 39,302 (La.App. 2d Cir.9/27/06), 940 So.2d 135, writ denied, 2006-2704 (La.8/31/07), 962 So.2d 424. The standard of review of a motion for recess is the same as the review of a motion for a continuance. Id. The granting or denial of a motion for continuance or recess is within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of abuse of that discretion and specific prejudice. LSA-C.Cr.P. art. 712; Id. LSA-C.Cr.P. art. 709 provides:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
During trial in the instant case, the court engaged in the following exchange with defendant's counsel regarding a defense witness:
Court: Mr. Clark, the bailiff has told me that one of your witnesses which is  I don't know her name. A young girl. I think she came in and we put her in your office while you were talking to your client. I don't know what her name is. Do you know her name?
Defense counsel: ML.
Do you want to bring her in and have her placed under the rule at this time?
Defense counsel: Yes, sir. That's fine.
The court then put the child and another witness under the rule of sequestration, and the child remained at the courthouse during the course of the trial that day. At the close of the state's case that afternoon, defendant's counsel obtained a brief recess, stating "I have a change in what I thought would take place, and I need to discuss momentarily with my client . . . And I think it's going to short-circuit a *318 lot." The defendant called one witness whose testimony was brief, and then defense counsel stated "Your Honor, that would leave us at the point of where I discussed with you in chambers." The court, noting that the time was almost 4 o'clock in the afternoon, allowed the jury to leave for the day.
The next morning, the defendant testified. At the conclusion of the defendant's testimony, defense counsel had this exchange with the court:
Defense counsel: I anticipated that was going to be a little longer than it turned out to be. If they have the young girl, ML, on her way here from school. She's being brought here at this moment.
Court: Did you subpoena her?
* * *
Defense counsel: I mean, she was voluntarily being here.
Court: How long do you think it's going to be for her to be here?
Defense counsel: I wouldn't say more than hopefully 10 or 15 minutes from Bienville.
Court: Do you need a recess?
Defense counsel: If I could, yes.
Court: All right.
After the recess, the discussion resumed:
Court: I think we're waiting for one of your witnesses 
Defense counsel: ML.
Court:  to come testify, is that correct?
Defense counsel: That is correct.
Court: And she is not here as of yet. I think we took a break, what, at 10:30?
Defense counsel: I believe that's approximately the time, yes, sir.
Court: . . . My understanding is . . . you want to recall [the victim] to the stand first. Is that correct?
Defense counsel: That is correct, Your Honor.
At that point, the prosecutor objected to recalling the victim to the stand on the grounds that the defendant previously had been able to cross-examine the girl about any issue. Defense counsel stated that he wanted to recall the victim to ask if she knew the defense witness ML and had spoken to her about the alleged incidents. The defense counsel further explained:
It was yesterday afternoon before they took her back to school at, I think, 2:00, 2:30, that she and I sat and spent about 10 uninterrupted minutes together talking, and that's when I said-and asked her point blank, now, this wasn't something someone told you they heard [the victim] say, because you can't sit there and testify if someone else told you "Oh, guess what I heard [the victim] say." I mean, and I explained that aspect of it to her. She responded to me again. She said, Mr. Clark, said she came to me. She and I talked. We talked. They live in the same area. They apparently go to the same school.
The state then informed the court that the case had been pending for some time, had been reset once from an original trial date in December 2006, and that the defense attorney had been aware of the trial date since January 2007 and had received sufficient time to secure the witness to testify. The court expressed its reluctance to allow the victim to be recalled to the stand if the defendant's attorney knew about ML's testimony at the time the victim initially testified, and the defendant's attorney reiterated that he did not know the substance of ML's testimony until the afternoon of the previous day. The court and the defense attorney then had the following exchange:
Court: And the other thing that concerns me, I know that [ML] is in school *319 and she's having a LEAP test, but, I mean, if you were going to have her as a witness, why wasn't she here at 9:30 and we could get this  all this done? Why are we sitting here waiting for the jury to sit out here for another hour, or hour and a half, because it's a witness that you knew you  were going to testify and she's not here?
Defense counsel: Judge, I thought this lady was going to have her here at 9:30. That's 
Court: Well, the thing about it is, that it's not cost to your  or your client to subpoena people, subpoena them and they'll be here. . . . I'm just concerned, you know, it concerns me that the case is dragging on because you're not subpoenaing your witnesses, you're not having them here. What I ought to do is just say if you [don't have] a witness here, we'll move on to the next thing. If they're not here, then you  they don't get to testify. That's just the way the law  that's just the way life is and the way law goes. . . . If the girl is not here by 11:30, we're proceeding. So, if she's not here by then, we're going on.
Defense counsel. I understand.
Court: It's 11:15 now. We're in recess.
* * *
Court: It's 11:25 now and the jury is not present but Mr. Kinsey is, along with Mr. Clark, and both the assistants. Mr. Clark has indicated to me outside during the break that the little girl was on a field trip. Is that correct? ML?
Defense counsel: Your honor, I have learned  as I learned it, I came into your chambers and advised you that we did find out the person that was going to drive her back here went into the school and was told that the class, her class, was on a field trip and was in fact not at the school. So, we don't know where that field trip took her. We don't  she may be here, but based on that information, I have no choice but to advise the Court and proceed forward from here.
Court: Any other witnesses, then?
Prosecutor: Your Honor, the only request I would like to make, and I don't know if this is in the record or not, that this particular witness, ML, was not subpoenaed to be here today.
Court: Madam Clerk, is that correct?
Clerk: That's correct.
Court: Let the record so reflect. Any other witnesses, Mr. Clark?
Defense counsel: No, Your Honor.
Court: You rest your case then, is that correct?
Defense counsel: That's what we're going to do, yes.
The defense counsel made no further objection or request for a continuance relating to this witness.
Initially, we note that after the trial court granted a recess during trial to give defendant an opportunity to secure the presence of the witness ML, defendant did not object to the trial court's refusal to grant yet another recess so that the defense could find the witness whose whereabouts were uncertain. The defendant cannot avail himself of an error after verdict unless it was objected to at the time of occurrence. LSA-C.Cr.P. art. 841(A). In any event, even if there had been an objection, defendant's argument would not succeed.
The record shows the defense attorney suggested that the missing witness would testify that the victim had made inconsistent statements "that she was not telling the truth about what took place and who did anything to her. . . ." Evidence of prior inconsistent statements by the victim may be admissible in appropriate circumstances. LSA-C.E. arts. 607(D)(2) and *320 613. However, the defendant's attorney failed to secure the appearance of the witness via the court's subpoena power, and did not state a probable time when the child witness could appear because she was on a school field trip at an apparently unknown location.
Moreover, unlike the factual situation in Spears, supra, in which the accused told a witness not to appear, there was no showing in this case that a party had any role in the failure of the witness to appear or that there was a last-minute breach of the witness's promise to testify. The witness ML was present and available to testify on the previous day, but the defendant seemingly agreed to an early recess of court at that time, after an unrecorded conference in chambers. The facts surrounding the child's failure to appear the next day are unclear from this record; the child was first thought to be taking the LEAP test and later was believed to be on a field trip. Regardless of the reason why the child was absent, the child was apparently within the jurisdiction of the court's subpoena power, yet no subpoena was issued for her appearance. Based upon this record, we cannot say the trial court abused its discretion in declining to further delay the trial when defendant's witness was not present to testify and had not been compelled to appear.
An accused has the right to confront and cross-examine the witnesses against him. La Const. art. 1, sec. 16. The main and essential purpose of confrontation is to secure for the opponent the opportunity for cross-examination. State v. Robinson, 01-0273 (La.5/17/02), 817 So.2d 1131.
Contrary to the defendant's argument, this case does not involve a situation where defendant was denied his right to confront the witnesses against him. The unavailable witness, ML, was to testify in defendant's behalf. Significantly, defendant was given the opportunity to cross-examine the victim and all of the other witnesses presented by the state. Thus, the defendant has failed to show that he was denied his right to confrontation. The assignment of error lacks merit.
Assistance of Counsel
The defendant contends he was denied effective assistance of counsel. Defendant argues that his attorney's failure to subpoena an impeachment witness to testify at trial constituted ineffective assistance of counsel.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Moore, 575 So.2d 928 (La.App. 2d Cir. 1991).
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires defendant to establish that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App. 2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 *321 (La.11/3/95), 662 So.2d 9. A defendant claiming ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La.App. 2d Cir.4/3/02), 813 So.2d 1123, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1067.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court, because PCR creates the opportunity for a full evidentiary hearing under LSA-C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App. 2d Cir.6/21/00), 764 So.2d 1164.
The defendant urges that his trial counsel's performance seriously infringed upon his right to confront the principal witness against him, the child victim, because the jury had no opportunity to hear evidence that would have challenged the credibility of the witness. On this record, the effect of trial counsel's failure to secure the presence of the child witness ML cannot adequately be measured. It remains uncertain what testimony the witness would have given and whether that testimony would have been admissible under the rules of evidence. Although counsel is ineffective when he fails to interview known witnesses, the election to call or not to call a particular witness is a matter of trial strategy and is not, per se, evidence of ineffective assistance. State v. Butler, 41,985 (La.App. 2d Cir.6/20/07), 960 So.2d 1208. It remains unknown whether counsel might have opted not to pursue a third recess as a matter of trial strategy or for some other reason not apparent from this record.
Consequently, the record is insufficient for this court to review the issue of ineffective assistance. The defendant's remedy is post-conviction relief wherein the quality of the attorney's performance can be fully developed and explored in an evidentiary hearing. Thus, the assignment of error is not properly before this court and we will defer the claim of ineffective assistance of counsel to post-conviction relief. State v. McGhee, 554 So.2d 145 (La.App. 2d Cir. 1989).
We have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.