# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**09-748**

**STATE OF LOUISIANA**

**VERSUS**

**KENDRICK SCOTT**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 146697B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy and Michael G. Sullivan, Judges.

**AFFIRMED.**

**David E. Lafargue**
**Lafargue Law Office**
**Post Office Box 277**
**Marksville, LA 71351**
**(318) 253-7521**
**COUNSEL FOR APPELLEE:**
    State of Louisiana

**Charles A. Riddle, III**
**District Attorney**
**Post Office Box 1200**
**Marksville, LA 71351**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
    State of Louisiana

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, LA   70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Kendrick Scott**

**Kendrick Scott**
**Louisiana State Penitentiary**
**Hickory 2**
**Angola, LA   70712**

AMY, Judge.

The defendant was convicted of second degree murder. He was subsequently sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. The defendant appeals his conviction. For the following reasons, we affirm.

## Factual and Procedural Background

The events at issue in the case occurred around 3:00 a.m. on April 20, 2008, in the parking lot of Bize's Lounge in Marksville, Louisiana. As the lounge was closing, a large crowd gathered in the parking lot, and several fights broke out. Bize's Lounge's security maced the crowd. The victim, Javondre Ravare, and his girlfriend, Carla Jones, upon leaving the front door, smelled the mace and decided to exit the lounge through a side door. Ms. Jones testified that, as the couple made their way to cross the street to get to their car, Mr. Ravare noticed a "commotion going on" across the street and instructed her to "stay right there." Derrick Stevenson testified that the "commotion" was the defendant and several of his friends beating Brandon Thomas's car in what Mr. Stevenson thought was an attempt to get Mr. Thomas out of the car. Several witnesses testified that when Mr. Ravare turned the corner of the club, the defendant struck Mr. Ravare several times with a baseball bat. Mr. Ravare fell to the ground unconscious and was later pronounced dead at the Avoyelles Hospital.

The defendant, Kendrick Scott, was charged by indictment filed on August 28, 2008, with second degree murder. The defendant pleaded not guilty and a trial by jury began on March 3, 2009. On March 4, 2009, a unanimous twelve-person jury returned a verdict of guilty of second degree murder. On March 10, 2009, the defendant was sentenced to life imprisonment without benefit of probation, parole,

or suspension of sentence. The defendant filed several motions, including a Motion for Post Verdict Judgment of Acquittal, Judgment Notwithstanding the Verdict, Motion for New Trial, and a Motion to Reconsider Sentence, which were all denied.

The defendant now appeals asserting two assignments of error. First, the defendant contends the evidence is insufficient to support his conviction. Second, the defendant contends that his defense counsel was ineffective.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, we have reviewed this matter for errors patent and find there are no errors patent.

*Sufficiency of the Evidence*

In his first assignment of error, the defendant contends that the trial court erred in finding him guilty of second degree murder. Specifically, the defendant argues the testimony given is not credible because "[i]n all the commotion and chaos, with gunshots and mace in the air, no one can say for certain what exactly transpired."

> The sufficiency of the evidence standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires an appellate court to determine whether "the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Hobley*, 98-2460, p. 33 (La.12/15/99); 752 So.2d 771, 790. A trier of fact is required to make credibility determinations "and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impose on the fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law." State v. Casey, 99-23, [p.14 (La.1/26/00), 775 So.2d 1022, 1034.]

*State v. Wommack*, 00-137, p. 5 (La.App. 3 Cir. 6/7/00) 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62.

2

The defendant was convicted of second degree murder, which is defined as "the killing of a human being . . . [w]hen the offender has the specific intent to kill or to inflict great bodily harm." La.R.S. 14:30.1. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1).

In the present case, the jury was presented with several witnesses who testified that the defendant was the person who struck Mr. Ravare with a baseball bat. Carla Jones, the victim's girlfriend, testified that she witnessed the defendant strike Mr. Ravare several times with a baseball bat. She testified that the area where this attack happened was well lit.

Derrick Stevenson, one of the lounge's patrons, testified that he was approximately seven feet away from the corner of the building when he saw the defendant strike Mr. Ravare six or seven times with a baseball bat.

Byron Augustine, a bouncer at the lounge, testified he saw the defendant walk "out [of] the alley with a bat and [swing] the bat and hit Javondre once in the head and Javondre fell to his knees and laid his head against the club." Mr. Augustine testified that he called his brother, another bouncer at the lounge, for help and "by the time we got to Javondre[,] Kendrick had hit him two more times[.]" Mr. Augustine testified that he knew the defendant by name because he had seen him in the club before.

Moesha Berry, another patron at the lounge, testified that, before the lounge closed, the defendant was involved in an altercation with two other people inside the lounge. Ms. Berry testified that, after the lounge closed, she saw the defendant

3

outside the lounge and told him to go home. She testified that he responded that "he wasn't leaving until he get [sic] them." Ms. Berry testified that she was standing next to the defendant when he "passed us up and started striking Javondre with the bat."

Catrisha Williams testified that she saw the defendant running with a bat hitting people. She testified that she was positioned evenly with the victim when she saw the defendant strike him over the head with a baseball bat.

The defendant asserts that the testimony in this case was so "incredible as to merit review and ultimate acquittal[.]" Specifically, the defendant argues:

> In all the commotion and chaos, with gunshots and mace in the air, no one can say for certain what exactly transpired. Byron Augustine testified that after Kendrick hit Javondre with the baseball bat, he hit him a couple of more times as Javondre lay on the ground. He states that there were no other individuals around as he dragged Javondre to the front of the club. Carla Jones, Javondre's girlfriend, testified others came and hit and kicked Javondre as he lay on the ground. Derrick Stevenson corroborated her story, yet Moesha Berry stated that Jones and Stevenson were not near Javondre as she was right next to him. Byron and Carla Jones testified that Kendrick hit Javondre twice with the bat after he fell to the ground. Catrisha Williams stated Kendrick hit him eight to nine times.

(Record citations omitted.) While there may be inconsistencies in the testimony regarding who was present when Mr. Ravare was hit, whether he was hit and stomped by persons other than the defendant, and the number of times that Mr. Ravare was struck with a bat, it cannot be said that the evidence presented at trial was insufficient to convict the defendant of second degree murder. Carla Jones, Derrick Stevenson, Byron Augustine, Moesha Berry, and Catrisha Williams testified that the defendant hit Mr. Ravare with a bat.

The *Jackson* standard, which the reviewing court uses in determining whether there is sufficient evidence to convict a defendant, does not permit this court "to second guess the rational credibility determinations of the fact finder at trial" or

4

"consider the rationality of the thought processes employed by a particular fact finder in reaching a verdict." *State v. Marshall*, 04-3139, pp. 5-6 (La. 11/29/06), 943 So.2d 362, 367, *cert. denied*, _ U.S. _, 128 S.Ct. 239 (2007). The jury chose to believe this testimony, and this court should not second-guess the credibility determinations made by that jury.

The defendant asserts that should this court find that Mr. Ravare was hit in the head, there is no evidence that the defendant delivered the fatal blow or that he had the specific intent to cause death or great bodily harm to Mr. Ravare. The defendant argues that "[i]n all the commotion, having been maced. . . Kendrick Scott was merely swinging at any and every individual."

Dr. Joel Carney, an expert in forensic pathology, performed an autopsy on Mr. Ravare on April 21, 2008. Dr. Carney testified that the cause of death was injuries to the head and brain which were the result of blunt force trauma consistent with being struck forcefully in the head with a bat. Dr. Carney could not determine how many blows to the head Mr. Ravere received.

This court has previously noted that the State is not required to prove that a defendant's violent act was the sole cause of death, but only that it hastened or clearly contributed to the victim's death. *See State v. Obney*, 99-592 (La.App. 3 Cir. 8/11/99), 746 So.2d 24, *writ denied*, 99-2667 (La. 5/5/00), 760 So. 2d 1190. The second circuit addressed a similar case stating:

> This evidence, viewed in the light most favorable to the prosecution, indicates that defendant struck the victim several times in the head with a baseball bat, using sufficient force to cause brain injuries and resulting death. Although intent is a question of fact, it need not be proven as a fact and may be inferred from the circumstances. *State v. Thomas*, *supra; State v. Kennington*, 515 So.2d 521 (La.App. 1st Cir.1987). The severity of an attack in which a victim is bludgeoned to death with a baseball bat is sufficient to demonstrate the necessary

5

specific intent to kill or inflict great bodily harm for second degree murder. *See State v. Myers*, 584 So.2d 242 (La.App. 5th Cir.1991), *writ denied*, 588 So.2d 105, and *cert. denied*, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992).

*State v. Guice*, 26,440, pp. 6-7 (La.App. 2 Cir. 10/26/94), 645 So.2d 1193, 1197, *writ denied*, 94-3122 (La. 6/30/95), 657 So.2d 1022.

Although Dr. Carney could not determine how many blows to the head Mr. Ravare received and witnesses testified that people other than the defendant were hitting and stomping Mr. Ravare, Dr. Carney testified that Mr. Ravare's injuries were consistent with being hit with a bat, and the defendant was the only person witnesses saw hit Mr. Ravare in the head with a bat. Thus, based on the evidence presented, the jury could have found that the defendant's action caused or contributed to Mr. Ravare's death.

In addition, although the defendant may, as he claims, have been swinging the bat at anyone who passed by, specific intent to cause great bodily harm can be inferred from the defendant's act of hitting Ravare in the head with a bat. *Guice*, 645 So.2d 1193.

Accordingly, this assignment is without merit.

*Ineffective Representation*

The defendant contends that his trial counsel was ineffective and but for his counsel's errors, the outcome of the trial would have been different. The defendant further asserts that "[w]ith an estimate between seventy-five and two hundred people in the parking lot, there can be no reason why more witnesses were not secured, especially with all of the conflicting stories." Lastly, the defendant argues that his counsel was ineffective because a motion to suppress the photographic identification

6

made by Carla Jones "two weeks after the incident, under questionable conditions" was never filed.

In *State v. Johnson*, 95-711, pp. 6-7 (La.App. 3 Cir. 12/6/95), 664 So.2d 766, 770-71, *writ denied*, 96-0082 (La. 3/29/96), 670 So.2d 1236, (citations omitted), this court explained:

> The Sixth Amendment of the United States Constitution and Article 1, Section 13 of the Louisiana Declaration of Rights guarantee a criminal defendant reasonably effective assistance of counsel. A strong presumption exists that the conduct of counsel falls within the wide range of responsible professional representation. The constitutional requirement of effective assistance of counsel does not guarantee errorless representation. Consequently, the defendant bears the burden of proving that his attorney failed to meet the requisite level of minimal competency which is normally required.

> In *Strickland v. Washington*, the United States Supreme Court set forth the test to determine whether the performance of a criminal defendant's counsel was deficient:

>> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

> Thus, the defendant must make both showings before the conclusion will be reached that his conviction was a result of a breakdown in the adversarial process rendering the conviction unreliable. Accordingly, if either is not met, then the claim of ineffective assistance of counsel will be disposed of.

> Since the constitutional guarantee does not require an attorney to take unnecessary actions, a criminal defendant who alleges that his attorney's performance was deficient based on his failure to perform specific acts must demonstrate that specific prejudice resulted from this failure.

7

The defendant has failed to set forth the names of witnesses defense counsel should have called upon to testify at trial and the facts to which they would testify. Thus, the defendant has failed to prove "specific prejudice resulted" from any failure to call additional witnesses at trial. *Id.* at 771; *See also, State v. Kinsey*, 42,935 (La.App. 2 Cir. 2/13/08), 976 So.2d 315.

Further, in regard to whether the defendant's trial counsel was ineffective for his failure to file a motion to suppress Carla Jones's identification, the defendant asserts only that the identification was made "two weeks after the incident, under questionable conditions."[1] Here, the defendant bears the burden of proving he was prejudiced by an inadmissible out-of-court identification, in that, the identification was suggestive and unreliable. *See State v. Harris*, 01-1908 (La.App. 4 Cir. 4/3/02), 815 So. 2d 402, *writ denied*, 02-1500 (La. 12/13/02), 831 So.2d 982. The defendant does not cite any evidence, other than the length of time, that the identification was suggestive.[2] Thus, the defendant has not carried his burden of proving he was prejudiced by an inadmissible out-of-court identification. *See Harris*, 815 So. 2d 402.

In addition, the defendant was also not prejudiced by his defense counsel's

---

[1] Generally, the defendant would be precluded from asserting errors regarding the admissibility of the photo line-up because his counsel did not file a motion to suppress or object to the evidence at trial; however, since the defendant contends that his trial counsel's failure to preserve the question of the admissibility of the photo identification constitutes ineffective assistance of counsel, it is proper to consider the admissibility of the identification. *State v. Johnson*, 95-711 (La.App. 3 Cir. 12/6/95), 664 So.2d 766, *writ denied*, 96-0082 (La. 3/29/96), 670 So.2d 1236.

[2] In determining whether there was a substantial likelihood of misidentification, we consider the factors as delineated by the United States Supreme Court in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375 (1972):(1) the witness' opportunity to view the criminal when the crime was committed; (2) the degree of attention by the witness; (3) the accuracy of the prior description of the criminal given by the witness; (4) the level of certainty evidenced by the witness at the confrontation; and (5) the amount of time between the offense and the confrontation. Furthermore, this court has held that "[a]gainst these factors is to be weighed the corrupting effect of the suggestive identification itself." *Johnson*, 664 So.2d at 770.

failure to file a motion to suppress Ms. Jones's identification, as several other witnesses testified that the defendant was the person who struck Mr. Ravare with a bat.

Accordingly, this assignment of error is without merit.

## DECREE

For the reasons assigned, the defendant's second degree murder conviction and sentence is affirmed.

**AFFIRMED.**